FILED

2022 Sep-16  AM 09:24
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
JASPER DIVISION

| | | |
|---|---|---|
| VIKKIE ALEXANDER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case Number: 6:20-cv-01862-JHE |
| | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY ADMINISTRATION, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION[1]**

Plaintiff Vikkie Alexander ("Alexander") seeks review, pursuant to 42 U.S.C. § 405(g), §

205(g) of the Social Security Act, of a final decision of the Commissioner of the Social Security

Administration ("Commissioner"), denying her application for disabled widow's benefits. (Doc.

1).  Alexander timely pursued and exhausted her administrative remedies. This case is therefore

ripe for review under 42 U.S.C. §§ 405(g), 1383(c)(3).  The undersigned has carefully considered

the record, and, for the reasons stated below, the Commissioner's decision is **REVERSED AND**

**REMANDED**.

**I. Factual and Procedural History**

On November 19, 2018, Alexander protectively filed an application for disabled widow's

benefits, alleging a disability onset date of September 25, 2014.  (Tr. 85, 147-53, 155-61, 171).

After the agency initially denied her application, Alexander requested and appeared at a hearing

before an Administrative Law Judge ("ALJ") on September 10, 2019.  (Tr. 41-69).  The ALJ issued

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c) and Federal Rule of Civil
Procedure 73, the parties have voluntarily consented to have a United States Magistrate Judge
conduct any and all proceedings, including trial and the entry of final judgment.  (*See* doc. 13).

an unfavorable decision on January 29, 2020, finding Alexander not disabled.  (Tr. 20-39).

Alexander requested review of the ALJ's decision, but the Appeals Council denied her request on

September 23, 2020.  (Tr. 1-6).  On that date, the ALJ's decision became the final decision of the

Commissioner.  On November 20, 2020, Alexander initiated this action.  (*See* doc. 1).

Alexander was 50 years old on her alleged onset date and at the time the ALJ rendered the

decision.  (Tr. 34, 152, 171).  Alexander has a high school education and no relevant past work

experience. (Tr. 177).  She alleges disability due to anxiety, depression, chronic obstructive

pulmonary disease ("COPD"), chronic allergies, rheumatoid arthritis, hyponatremia, restless leg

syndrome, heartburn, a small blockage in the neck, and low blood pressure.  (Tr. 176).

## II. Standard of Review[2]

The court's review of the Commissioner's decision is narrowly circumscribed. The

function of this Court is to determine whether the decision of the Commissioner is supported by

substantial evidence and whether proper legal standards were applied. *Richardson v. Perales*, 402

U.S. 389, 390 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). This Court must

"scrutinize the record as a whole to determine if the decision reached is reasonable and supported

by substantial evidence." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).

Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate

to support a conclusion." *Id.* It is "more than a scintilla, but less than a preponderance." *Id.*

This Court must uphold factual findings supported by substantial evidence.  "Substantial

evidence may even exist contrary to the findings of the ALJ, and [the reviewing court] may have

---

[2]In general, the legal standards applied are the same whether a claimant seeks DIB or SSI. However, separate, parallel statutes and regulations exist for DIB and SSI claims. Therefore, citations in this opinion should be considered to refer to the appropriate parallel provision as context dictates. The same applies to citations for statutes or regulations found in quoted court decisions.

taken a different view of it as a factfinder. Yet, if there is substantially supportive evidence, the findings cannot be overturned." *Barron v. Sullivan*, 924 F.2d 227, 230 (11th Cir. 1991).  However, the Court reviews the ALJ's legal conclusions *de novo* because no presumption of validity attaches to the ALJ's determination of the proper legal standards to be applied. *Davis v. Shalala*, 985 F.2d 528, 531 (11th Cir. 1993). If the court finds an error in the ALJ's application of the law, or if the ALJ fails to provide the court with sufficient reasoning for determining the proper legal analysis has been conducted, it must reverse the ALJ's decision. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

### III. Statutory and Regulatory Framework

To qualify for disability benefits and establish his or her entitlement for a period of disability, a claimant must be disabled as defined by the Social Security Act and the Regulations promulgated thereunder.[3] The Regulations define "disabled" as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months." 20 C.F.R. § 404.1505(a). To establish entitlement to disability benefits, a claimant must provide evidence of a "physical or mental impairment" which "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1508.

The Regulations provide a five-step process for determining whether a claimant is disabled. 20 C.F.R. § 404.1520(a)(4)(i-v). The Commissioner must determine in sequence:

(1)    whether the claimant is currently employed;
(2)    whether the claimant has a severe impairment;
(3)    whether the claimant's impairment meets or equals an impairment listed

[3]The "Regulations" promulgated under the Social Security Act are listed in 20 C.F.R. Parts 400 to 499.

by the [Commissioner];

(4)    whether the claimant can perform his or her past work; and

(5)    whether the claimant is capable of performing any work in the national economy.

*Pope v. Shalala*, 998 F.2d 473, 477 (7th Cir. 1993) (citing to the formerly applicable C.F.R. section), *overruled on other grounds by Johnson v. Apfel*, 189 F.3d 561, 562-63 (7th Cir. 1999); *accord McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). "Once the claimant has satisfied steps One and Two, she will automatically be found disabled if she suffers from a listed impairment. If the claimant does not have a listed impairment but cannot perform her work, the burden shifts to the [Commissioner] to show that the claimant can perform some other job." *Pope*, 998 F.2d at 477; *accord Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995). The Commissioner must further show such work exists in the national economy in significant numbers. *Id.*

## IV. Findings of the Administrative Law Judge

After consideration of the entire record and application of the sequential evaluation process, the ALJ made the following findings:

At Step One, the ALJ found Alexander was the unmarried widow of the deceased insured worker who had attained the age of 50.[4]  (Tr. 26).  At Step Two, the ALJ found Alexander had the following severe impairments: degenerative disc disease/osteoarthritis of the cervical and lumbar spine; degenerative joint disease of the right knee; rheumatoid arthritis, with joint flexion contracture deformity of the right elbow and left knee; sensory axonal peripheral neuropathy; obesity; mild, non-occlusive carotid artery disease; a major depressive disorder; an anxiety

---

[4] A claimant may be eligible for widow's insurance benefits if she is between fifty and sixty years of age and is under a disability that began within a prescribed period. *See* 42 U.S.C. § 402(e)(1)(B)(ii); 20 C.F.R. § 404.335(c). As the ALJ noted, the prescribed period in Alexander's case began on September 14, 2018, and ends on February 29, 2024, the date she is last entitled to survivor's benefits.  (Tr. 26). *See* 42 U.S.C. § 402(e)(4); 20 C.F.R. § 404.335(c)(1).

disorder; and COPD/allergic rhinitis. (*Id*.). At Step Three, the ALJ found Alexander did not have

an impairment or combination of impairments that meets or medically equals one of the listed

impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 37).

Before proceeding to Step Four, the ALJ determined Alexander's residual functioning

capacity ("RFC"), which is the most a claimant can do despite her impairments. *See* 20 C.F.R. §

404.1545(a)(1). The ALJ determined Alexander had the RFC to perform a reduced range of light

work as defined in 20 CFR 404.1567(b), 416.967(b).[5] (Tr. 29-30). The ALJ further explained:

> Specifically, the claimant can occasionally lift and/or carry up to twenty pounds
> and frequently lift/and or carry up to ten pounds. She can stand and/or walk in
> combination, with normal breaks, for at least six hours during an eight-hour
> workday and sit, with normal breaks, for up to eight hours during an eight hour
> workday. The claimant can occasionally climb ramps and stairs and should never
> climb ladders, ropes, or scaffolds. She can occasionally balance, stoop, kneel, and
> crouch, but she can never crawl. She should not be required to perform overhead
> work activities bilaterally. She can frequently perform fine and gross manipulations
> with her hands bilaterally. She should not be required to work in exposure to
> extreme heat, extreme cold, wetness, humidity, or areas of vibration. She can
> tolerate occasional (as the term "occasional" is defined in the Dictionary of
> Occupational Titles (or DOT)) exposure to pulmonary irritants including fumes,
> dusts, odors, gases, and areas of poor ventilation. The claimant should avoid
> exposure to industrial hazards including working at unprotected heights, working
> in close proximity to moving dangerous machinery, and the operation of motorized
> vehicles and equipment. She can perform simple, routine tasks requiring no more
> than short, simple instructions and simple work-related decisionmaking with few
> workplace changes. She can have frequent interactions with co-workers and

---

[5] "Light work" is defined as follows:

Light work involves lifting no more than 20 pounds at a time with frequent lifting
or carrying of objects weighing up to 10 pounds. Even though the weight lifted may
be very little, a job is in this category when it requires a good deal of walking or
standing, or when it involves sitting most of the time with some pushing and pulling
of arm or leg controls. To be considered capable of performing a full or wide range
of light work, you must have the ability to do substantially all of these activities. If
someone can do light work, we determine that he or she can also do sedentary work,
unless there are additional limiting factors such as loss of fine dexterity or inability
to sit for long periods of time.

20 C.F.R. 404.1567(b).

supervisors and occasional interactions with members of the general public. The claimant can adapt and respond appropriately to routine changes in the workplace.

(*Id.*).

At Step Four, the ALJ determined Alexander had no past relevant work. (Tr. 33). At Step Five, the ALJ considered Alexander's RFC in conjunction with testimony from a vocational expert ("VE") and found Alexander could perform other work available in the national economy, including representative occupations such as small parts assembler, electronics worker, and inspector/hand packager (Tr. 33-34). Therefore, the ALJ determined Alexander had not been under a disability from September 14, 2018, through the date of the decision and denied Alexander's claim. (Tr. 34).

## V. Analysis

Although the court may only reverse a finding of the Commissioner if it is not supported by substantial evidence or because improper legal standards were applied, "[t]his does not relieve the court of its responsibility to scrutinize the record in its entirety to ascertain whether substantial evidence supports each essential administrative finding." *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) (citing *Strickland v. Harris*, 615 F.2d 1103, 1106 (5th Cir. 1980)). The court, however, "abstains from reweighing the evidence or substituting its own judgment for that of the [Commissioner]." *Id.* (citation omitted).

Alexander contends the ALJ erred when she improperly evaluated and discounted Alexander's complaints of pain and other disabling symptoms. (Doc. 16 at 14-18). Specifically, Alexander contends the ALJ's finding that Alexander can frequently perform fine and gross manipulations with her hands bilaterally is not supported by substantial evidence. (*Id.* at 13-14). Alexander also contends the ALJ did not properly apply the Eleventh Circuit's pain standard when discounting Alexander's other complaints of pain. (*Id.* at 15-18). Here, there is not substantial

evidence to support the ALJ's determination that Alexander could frequently perform fine and gross manipulations with her hands bilaterally.

**A. There is Not Substantial Evidence to Support the Finding that Alexander Can "Frequently Perform Fine and Gross Manipulations with her Hands Bilaterally"**

In determining that Alexander could perform a reduced range of light work, the ALJ found that "[s]he can frequently perform fine and gross manipulations with her hands bilaterally." (Tr. 30). "Frequently means occurring from one-third to two-thirds of the time." *See* SSR 83-10. Alexander contends her testimony proves that she is not able to perform fine and gross manipulations with her hands on a frequent daily basis. (Doc. 16 at 14). At her administrative hearing, Alexander testified as follows: "My left thumb does not bend in. My right end won't bend out. I can't hold anything for 10 minutes. I drop something twice a week if I don't grip it right." (Tr. 50). She further testified that her hands are so numb she has scalded herself because she cannot feel how hot the water is. (Tr. 53). During the hearing the ALJ noted Alexander's "significant curvature of [t]he thumb joint" and asked Alexander if she could flex it and bring it into her palm. (*Id.*). Alexander answered no. (*Id.*). The ALJ then noted for the record that the tip of Alexander's thumb joint "is curved out at almost 90 degrees." (*Id.*).

The ALJ asked Alexander whether she had any flexion of that joint at all and she said no. (Tr. 53-54). Alexander stated: "I can't grip with my left thumb. On my right hand, I can grip, but that's as far as it goes out." (Tr. 54). Alexander testified that she can carry a gallon of milk to the cash register with her right hand, but if she had to hold it with her left she would drop it. (Tr. 54-55). If she tries to type, Alexander testified she can feel the keys with her right hand, but her left hand would soon start tingling and go numb. (Tr. 55).

When asked how often her hand gets numb, Alexander testified: "My hand is anything I do. I can't load the dishwasher or clothes. It tingles and cramps. My arm I can't hang wash out

anymore. Lifting up and down with the left arm makes it go numb." (Tr. 60).

Alexander also testified that Dr. Saag suggested she get a cane to walk or stand, "but my hands, I can't hold on to it." (Tr. 61). She explained that, "[i]f my knee comes out from under me, this hand is not going to hold it with the knots and all." (Tr. 61-62). Alexander also testified that the bump on her wrist swells, and she has knots on her left elbow from arthritis. (Tr. 62).

Although Alexander alleged that her symptoms and conditions were disabling, a claimant cannot establish disability based solely on subjective descriptions of pain and other symptoms. *See* 42 U.S.C. § 423(d)(5)(A). The Commissioner's regulations at 20 C.F.R. § 404.1529, identify how the ALJ evaluates subjective complaints. According to the regulations, medical signs or laboratory findings must show there is a medical impairment that could reasonably be expected to produce the symptoms alleged. *See* 20 C.F.R. § 404.1529(a), (b). If medical signs or laboratory findings demonstrate the existence of such a medical impairment, the ALJ then evaluates the intensity and persistence of the symptoms to determine how the symptoms limit the claimant's capacity for work. *See* 20 C.F.R. § 404.1529(c)(1).

Similar to the Commissioner's two-step process for evaluating subjective complaints, 20 C.F.R. § 404.1529, the Eleventh Circuit's pain standard requires: (1) evidence of an underlying medical condition: and, either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition, or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain. *See Wilson v. Barnhart*, 284 F.3d 1219, 1227 (11th Cir. 2002). If the claimant has met the pain standard, the ALJ still considers the intensity, persistence, and limiting effects of a claimant's pain. *See Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir. 1995). The Eleventh Circuit has recognized the Commissioner's regulations at 20 C.F.R. § 404.1529 are consistent with the Eleventh Circuit's

pain standard, and the ALJ need not quote the pain standard verbatim as long as the ALJ applies it. *See Wilson*, 284 F.3d at 1225-26. A court "will not disturb a clearly articulated" finding about subjective complaints supported by substantial evidence. *See Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014).

When evidence documents an impairment that could reasonably be expected to produce the symptoms alleged by a claimant, the ALJ then evaluates the intensity and persistence of the symptoms to determine how the symptoms limit the claimant's capacity for work. *See* 20 C.F.R. § 404.1529(c)(1); *Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir. 1995). Subjective complaint evaluations are the province of the ALJ. *See Moore*, 405 F.3d at 1212. In making findings related to a claimant's subjective statements of symptoms and limitations, the ALJ must articulate specific reasons for discounting the claimant's statements and these reasons must be supported by substantial evidence. *See Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005); *see also Foote*, 67 F.3d at 1562 ("A clearly articulated credibility finding with substantial supporting evidence in the record will not be disturbed by a reviewing court.").

In evaluating a claimant's subjective complaints, the ALJ considers objective medical evidence and information from the claimant and treating or examining physicians, as well as other factors such as evidence of daily activities, the frequency and intensity of pain, any precipitating and aggravating factors, medication taken and any resulting side effects, and any other measures taken to alleviate the claimant's pain or other symptoms. *See* 20 C.F.R. § 404.1529(c)(2), (3); SSR 16-3p, 2017 WL 1119029, at *4-6; *see also Dyer*, 395 F.3d at 1212 (finding the ALJ "adequately explained his reasons" for discounting claimant's pain testimony where "the ALJ considered [claimant's] activities of daily living, the frequency of his symptoms, and the types and dosages of his medications, and concluded that [claimant's] subjective complaints were inconsistent with

his testimony and the medical record"). When evaluating symptom intensity and persistence, the ALJ also considers an individual's attempts to seek medical treatment for symptoms and to follow treatment once it is prescribed. *See* SSR 16-3p, 2017 WL 1119029, at \*9-10.

In evaluating the extent to which a claimant's symptoms, such as pain, affect her capacity to perform basic work activities, the ALJ appropriately considers all of the available evidence, including inconsistencies in the evidence, and the extent to which there are conflicts between claimant's statements and the rest of the evidence, including the history, signs and laboratory findings, and statements by treating and non-treating sources or other persons about how the symptoms affect the claimant. *See* 20 C.F.R. § 404.1529(c)(4); *see also* SSR 16-3p, 2017 WL 1119029, at \*5 ("We must consider whether an individual's statements about the intensity, persistence, and limiting effects of his or her symptoms are consistent with the medical signs and laboratory findings of record."). However, Eleventh Circuit case law does not require an ALJ to enumerate every factor in every decision. *See Dyer*, 395 F. 3d. at 1210 (holding that an ALJ's decision need only be explicit enough to enable a reviewing court to determine the reasoning behind findings); *Foote*, 67 F.3d at 1561 (concluding that the ALJ need not cite to particular phrases or formulations, but must provide reasons that would enable a reviewing court to conclude that the ALJ considered the claimant's medical condition as a whole).

In her decision, the ALJ evaluated Alexander's subjective complaints regarding the use of her hands, and, as with other complaints of pain, the ALJ found Alexander's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [Alexander]'s statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and the other evidence in the record, for the reasons explained in this decision." (Tr. 31).

As to the limitation regarding use of Alexander's hands, the ALJ acknowledged Alexander alleges she suffers from, among other things, rheumatoid arthritis. (Tr. 30). The ALJ reviewed Alexander's hearing testimony regarding the limited use of her hands and noted that there would be some manipulative (and other) limitations. (Tr. 30-31). However, the ALJ determined that Alexander's allegations of severe functional limitations related to her hands were not supported by objective evidence. (Tr. 31-33). Specifically, the ALJ noted that a rheumatologist had observed "bogginess" (abnormal texture) and tenderness in several of Alexander's finger joints as well as synovitis (i.e., inflammation) in her finger joints. (Tr. 31). The ALJ further noted Alexander had exhibited some clinical signs of peripheral neuropathy and electrodiagnostic testing has revealed the presence of mild sensory axonal peripheral neuropathy, as well as chronic C7 cervical radiculopathy, in her left upper extremity. (*Id.*).

The ALJ determined Alexander's testimony that she was extremely limited in the use of her hands was inconsistent with record evidence demonstrating minimal weakness in her extremities as well as inconsistent with the conservative treatment she received. (Tr. 32). Furthermore, the ALJ noted more recent treatment from the rheumatology specialist documented improvement with Alexander's rheumatoid arthritis symptoms with the use of appropriate medication. (*Id.*; *see* tr. 651-55 (noting RA symptoms improved on Enbrel and prednisone)). The ALJ purportedly accommodated these limitations by limiting Alexander to no overhead work and no more than frequent fine and gross manipulations with her hands. (Tr. 30).

Although the ALJ notes that Alexander's symptoms improved with Enbrel and prednisone, she fails to account for the concurrent report that Alexander's left hand and left arm pain and heaviness persisted and became worse with activity. (Tr. 651). These records also include that Alexander presented with left elbow with RA nodules and a positive MTP squeeze on the left. (Tr.

11

654).

Although there appears to be some evidence in the record that Alexander's condition may not be as severe as she alleges,[6] there is not substantial evidence to support the ALJ's determination that she can "frequently perform fine and gross manipulations with her hands bilaterally."  Even when records note improvement with medication, those same records recognize persistent pain that worsens with activity.  (Tr. 651).

On remand, the ALJ should reevaluate Alexander's RFC and consider whether the relevant medical evidence supports further functional limitations -  particularly related to Alexander's use of her hands.

### VI. Conclusion

Based on the foregoing, and upon careful consideration of the administrative record and memoranda of the parties, the Commissioner of Social Security's decision denying Alexander's claim for disabled widow's benefits is **REVERSED**, and this action is **REMANDED**  with instructions to reevaluate Alexander's RFC and consider the frequency she can perform fine and gross manipulations with her hands bilaterally.  A separate order will be entered.

DONE this 16th day of September, 2022.

_____

**JOHN H. ENGLAND, III**
UNITED STATES MAGISTRATE JUDGE

---

[6] Many of the records the ALJ cites are for issues unrelated to Alexander's rheumatoid arthritis.  For example, the ALJ points to a counseling visit in June 2019 for depression.  While this record indicates Alexander has normal movement of her extremities (tr. 745), it is highly unlikely that a counseling visit for depression would involve a physical exam.